```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT

KATHRYN FERRIS STERGUE,         :
                                :
     Plaintiff,                 :
                                :
v.                              :      Case No. 3:13-cv-25 (RNC)
                                :
CAROLYN W. COLVIN, Acting       :
Commissioner of Social Security,:
                                :
     Defendant.                 :
```

RULING AND ORDER

Plaintiff Kathryn Ferris Stergue brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance and supplemental security income benefits. Magistrate Judge Martinez has issued a recommended ruling that plaintiff's motion to reverse the Commissioner's decision be denied and that defendant's motion to affirm the decision be granted. Plaintiff has filed an objection to the recommended ruling and defendant has responded. For reasons that follow, the recommended ruling is approved and adopted.

I.  Background

Between 1988 and the mid-2000s, plaintiff was employed as a dental hygienist. Since then, her ability to work has been adversely affected by a number of impairments. Symptoms of fibromyalgia, which plaintiff has experienced since the mid-

1

1990s, worsened after a cerebral hemorrhage in 2004.  R. 851-52. Obesity contributed to pain in her back, legs and neck and complicated other ailments.  She experienced edema in her legs, developed degenerative disc disease in her back, and had trouble in her left shoulder that compromised her range of motion.  Id. This constellation of problems increased in severity after she had a bad fall and car accident.  Id.  Emotional distress accompanied the plaintiff's physical infirmities: she began to suffer from depression and anxiety attacks, which occasionally caused her to remain in bed for a day or two at a time.  Id.

Plaintiff's troubles prevented her from continuing to work as a dental hygienist and she has not been formally employed for any significant period of time since 2006.  In the years since, a number of doctors, including mental health professionals, have credited her complaints and documented her struggles.  R. 853–56. But at the same time, plaintiff has almost never been unable to function from day to day.  At various points since she stopped working as a hygienist, she has been able to serve as primary caregiver to her sick father, to socialize, and to work for a dog-walking business she started with her roommate.  R. 857.  She has also regularly participated in religious services and instructed others in Bible study.

The plaintiff filed her first application for disability benefits in 2007.  After several years of review at multiple

levels and the filing of two more applications, an administrative law judge ("ALJ") determined that plaintiff was not disabled and denied her applications for disability insurance and supplemental security income benefits.

Plaintiff contends that the ALJ erred in his determination that she is not disabled. Her argument rests on four different grounds. First, she argues that the ALJ erred in assessing the severity of her impairments. Second, she argues that the ALJ improperly declined to credit some of her testimony. Third, she argues that the ALJ failed to comply with the treating physician rule. Finally, she contends that the ALJ should have called a vocational expert to determine whether she is able to work instead of relying on the Medical Vocational Guidelines. In the recommended ruling, Magistrate Judge Martinez concludes that the ALJ's finding should be affirmed over plaintiff's objections.

II.  Standard of Review

This Court may set aside the ALJ's decision "only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks omitted). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Zabala v. Astrue, 595 F.3d 402, 408 (2d Cir. 2010). This Court's role is not to reweigh the evidence. Rather, the

ALJ's decision must be affirmed "if it is based upon substantial evidence even if the evidence would also support a decision for the plaintiff."  Bellamy v. Apfel, 110 F. Supp. 2d 81, 87 (D. Conn. 2000).  When a decision "rests on adequate findings supported by evidence having rational probative force," a court may "not substitute [its] judgment for that of the Commissioner." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

III. Discussion

A person who is disabled is entitled to benefits under the Social Security Act.  42 U.S.C. §§ 423(a)(1), 1381a.  A "disability" is "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Under the Social Security regulations, determining whether an individual is disabled entails five steps:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry

is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work that the claimant could perform.

Rivera v. Schweiker, 717 F.2d 719, 722 (2d Cir. 1983).  With respect to the first four steps, the claimant bears the burden of proof.  But once the claimant shows at the fourth step that she cannot perform her past work, the burden shifts to the Commissioner at step five to show the existence of other work suited to the claimant's abilities.  Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008).

In this case, the ALJ's five-step evaluation proceeded as follows.  First, he found that plaintiff had not engaged in

substantial gainful activity since December 2006.  He then found that she suffered from a number of "severe impairments," including fibromyalgia, shoulder impingement, obesity, episodes of cellulitis, sleep apnea, depression, panic disorder, and obsessive-compulsive disorder.  The ALJ found that these impairments did not meet or medically exceed the "listed impairments" in 20 CFR, Pt. 404. R. 849.  He determined that the plaintiff had the "residual functional capacity to perform sedentary work . . . except she can only frequently use her upper extremities for reaching.  She is limited to simple instructions and can perform routine, repetitive tasks."  R. 850.  At step four, the ALJ found that plaintiff could not perform her past relevant work as a dental hygienist.  At step five, he concluded that, given her age, education, experience and residual functional capacity, "there are jobs that exist in significant numbers in the national economy" that she can perform.  R. 860.

  A. <u>Severity of Plaintiff's Impairments</u>

  The thrust of plaintiff's first argument is that the ALJ misjudged the severity of her impairments.  Plaintiff's briefing on this point discusses evidence that could support a finding that her ailments were serious enough to be disabling.  But the issue is not whether the record evidence could have supported such a finding by the ALJ; the issue is whether the finding that the ALJ did render is supported by substantial evidence.  <u>See</u>

Zabala, 595 F.3d at 408.  After de novo review, I conclude that the ALJ's finding is adequately supported.

The ALJ's opinion addressing plaintiff's physical impairments discusses evidence tending to show that she was not disabled during the relevant period of time.  In 2007, a physical therapist noted that plaintiff had been making "slow, steady gains"; had a marked decrease in the pain associated with her fibromyalgia; and was regularly performing household chores and physical labor outside the home.  R. 853-54.  Epidural steroid injections were providing plaintiff with relief from most symptoms for months at a time.  R. 854.  In consultative examinations between 2008 and 2010, state agency physicians found that plaintiff's level of pain was low and she was able to sit and stand without discomfort.  R. 855.  Between 2010 and 2012, plaintiff reported that she was caring for her father, cooking his food, and operating a dog-walking business with a friend.  R. 856-57.

With regard to plaintiff's mental health, the record shows that between 2008 and 2010, state agency physicians examined her and found no debilitating difficulty with her activities of daily living or social interaction.  R. 855.  Use of pharmaceuticals provided her with relief from symptoms of depression.  Id.  Her Global Assessment of Functioning scores, which indicate the severity of mental illness, generally reflected "mild to

moderate" impairment. R. 856. As the ALJ noted, a reasonable level of mental and emotional functioning was also indicated by plaintiff's ability to care for her father and actively participate in the dog-walking business. R. 857. Based on the entire record, the ALJ found that plaintiff's own representations concerning the severity of her impairments – on which she relied heavily at her hearing – were not entirely credible. R. 851.

Plaintiff points to medical evidence tending to show that her impairments were more severe than found by the ALJ. However, the ALJ considered this evidence and provided a reasoned explanation for his conclusion that it failed to support plaintiff's claim. For instance, one doctor indicated in 2009 that plaintiff needed to elevate her legs for eighty or ninety percent of every day. R. 857. The ALJ determined that the doctor's statement was entitled to little weight because it was inconsistent with record evidence from the same time period and rested "heavily" on plaintiff's subjective complaints. Id. In effect, plaintiff urges the Court to reweigh the evidence and substitute its judgment for that of the ALJ concerning the severity of plaintiff's impairments. But the evidence just summarized is adequate to support the ALJ's finding.[1]

---

[1] Plaintiff argues that the ALJ erred by ignoring her obesity and failing to consider all her impairments in combination. This argument is closely related to the claim that the ALJ failed to accurately assess the severity of her limitations, and it likewise fails. The ALJ discussed plaintiff's obesity, R. 854, and it is apparent that the ALJ

8

Accordingly, the ALJ's assessment of the severity of plaintiff's impairments cannot be overturned.

B. <u>Evaluation of Credibility</u>

As just mentioned, the ALJ found that plaintiff's testimony about the nature and extent of her impairments was not entirely credible. R. 851. Plaintiff argues that this finding is not adequately supported. I disagree. In support of his credibility determination, the ALJ explained that plaintiff's testimony concerning the severity of her impairments was inconsistent with other evidence, including the evidence discussed above. In addition, he explained that when plaintiff testified at the hearing, she omitted to discuss matters that could hurt her case. She did not mention her role in her father's life, her job as a dog-walker, or her participation in other activities requiring some degree of physical exertion.

The ALJ had a duty to assess plaintiff's testimony concerning the severity of her impairments in light of the record as a whole, and he was entitled to consider that plaintiff omitted to testify about participating in activities that could undercut her claim. Having done so, the ALJ could reasonably conclude that plaintiff's testimony concerning her impairments should be discounted.

---

considered plaintiff's various maladies as an interconnected web of impairments.

C. <u>The Treating Physician Rule</u>

Under the treating physician rule, "[t]he opinion of a treating physician on the nature or severity of a claimant's impairments is binding if it is supported by medical evidence and not contradicted by substantial evidence in the record." <u>Selian v. Astrue</u>, 708 F.3d 409, 418 (2d Cir. 2013). In essence, the rule provides that an ALJ should prefer the opinion of a treating physician – one who has consulted with the patient repeatedly over time – to the opinion of a physician who has merely examined the patient on one or two occasions. In this case, plaintiff's claim that she is unable to work is supported by the opinions of treating physicians (Drs. Delaney and Lulo), as the ALJ acknowledged. R. 856-57. But the ALJ declined to give conclusive weight to their opinions. Plaintiff contends that this constitutes reversible error.

The treating physician rule permits an ALJ to decline to give controlling weight to the opinion of a treating physician if the opinion is contradicted by substantial evidence in the record. <u>See</u> <u>Burgess</u>, 537 F.3d at 128. This is such a case. In declining to give controlling weight to the opinions of plaintiff's treating physicians, the ALJ cited reports of examinations done by a number of non-treating physicians (Drs. Samai, Joseph, Dunford, and Higgins). These reports, combined with the evidence summarized above concerning plaintiff's

10

condition during the relevant period (including her own representations to doctors and therapists about her activities), constitute substantial evidence contradicting the reports of plaintiff's treating physicians.  Moreover, in assessing the weight to be given the opinions of plaintiff's treating physicians, the ALJ explained that the opinions were not well-supported.  For instance, in discounting Dr. Delaney's 2009 report, the ALJ explained that the report would receive "limited weight" because it was contradicted by other evidence, Dr. Delaney's own treatment notes indicated that plaintiff was capable of more activity than he suggested, and Dr. Delaney's conclusions were based almost entirely on plaintiff's statements rather than medical tests.  R. 857-58.  In these circumstances, the ALJ did not err in declining to give controlling weight to the opinions of plaintiff's treating physicians.

D.   Vocational Evaluation

Plaintiff contends that the ALJ erred in relying on the Medical Vocational Guidelines rather than consulting a vocational expert.  These Guidelines, known as the "Grids," are a "shorthand way of evaluating vocational factors that take into consideration a claimant's age, education, and previous work experience." Bethea v. Astrue, No. 3:10-CV-744 JCH, 2011 WL 977062, at *13 (D. Conn. Mar. 17, 2011).  But the Grids do not account for a

11

claimant's "nonexertional limitations."[2]  For this reason, reliance on the Grids is improper if a non-exertional limitation "has any more than a negligible impact on a claimant's ability to perform the full range of work."  Selian, 708 F.3d at 421 (2d Cir. 2013).  The "mere existence" of a non-exertional impairment does not "automatically" preclude reliance on the Grids.  Zabala, 595 F.3d at 410-11.  Rather, the Grids are not applicable when a claimant suffers from a non-exertional impairment that is "significant," meaning the impairment "so narrows a claimant's possible range of work as to deprive [her] of a meaningful employment opportunity."  Selian, 708 F.3d at 421.  It is error for an ALJ to rely on the Grids instead of obtaining vocational expert testimony without "affirmatively determin[ing]" whether a claimant's non-exertional limitation is negligible.  Id. at 422.[3]

---

[2] Non-exertional limitations are defined as limitations that are not related to the strength demands of a job.  See Lumpkin v. Colvin, No. 3:12CV1817 DJS, 2014 WL 4065651, at *11 (D. Conn. Aug. 13, 2014).  Examples of non-exertional limitations include difficulty with "manipulative or postural functions" such as reaching, stooping, and crawling.  Id. at n.9.  The Regulations set out numerous examples of nonexertional limitations.  See 20 C.F.R. § 404.1569.a(c)(1).

[3] Case law recognizes the need for adequate reasoning in connection with a finding that nonexertional limitations do not affect a claimant's occupational base.  In Owens v. Comm'r of Soc. Sec., 508 F. App'x. 881 (11th Cir. 2013), for example, an ALJ concluded that "[t]he claimant's ability to understand, carry out, and remember simple instructions, use judgment in making work-related decisions . . . and deal with changes in a routine work setting does not substantially limit the occupational base."  Owens, 508 F. App'x. at 884.  He failed to support that finding with record evidence or with further reasoning.  The Eleventh

In this case, at step 3 of the sequential evaluation process, the ALJ found that plaintiff had the capacity to "perform sedentary work . . . except she can only frequently use her upper extremities for reaching. She is limited to simple instructions and can perform routine, repetitive tasks." R. 850. After determining that plaintiff could not perform her past relevant work, the ALJ moved on to step 5, and stated the following with regard to her nonexertional limitations: "[T]he additional limitations have little or no effect on the occupational base of unskilled sedentary work. . . . The claimant's mental limitations would not preclude her from performing unskilled work. Her upper extremity limitations would not significantly erode the occupational base of sedentary work." R. 860.

This determination by the ALJ, viewed in light of the record as a whole, suffices as an affirmative determination that plaintiff's non-exertional limitations were negligible. If this finding is supported by substantial evidence, the ALJ was permitted to rely on the Grids and did not have to consult a vocational expert. See Woodmancy v. Colvin, 577 F. App'x 72, 76 (2d Cir. 2014) (vocational expert testimony not required where ALJ found that claimant could perform unskilled work, and that

---

Circuit remanded on the ground that "the ALJ provided no explanation of how he arrived at this conclusion." Id.

13

determination was supported by substantial record evidence); Lewis v. Colvin, 548 F. App'x 675, 678 (2d Cir. 2013) (ALJ could rely on Grids after determining that certain mental limitations "'had little or no effect on the occupational base of unskilled light work,'" and that determination was supported by the record evidence (quoting ALJ Opinion)); Lawler v. Astrue, 512 F. App'x 108, 111-12 (2d Cir. 2013) (reliance on Grids was permissible where ALJ concluded that claimant's "'non-exertional limitations did not significantly narrow the range of work he can perform,'" and that determination was supported by substantial evidence (quoting record)); Jordan v. Comm'r of Soc. Sec., 194 F. App'x 59, 62 (2d Cir. 2006) (ALJ's failure to "specifically state" reasons for finding non-exertional limitations negligible "does not render the ALJ's factual findings erroneous"); cf. Selian, 708 F.3d at 422 (remanding where ALJ did not determine whether claimant's reaching limitation precluded reliance on Grids); Sesa v. Colvin, 629 F. App'x 30, 33 (2d Cir. 2015) (remanding where ALJ's opinion did not discuss purported reaching limitation at all).[4]

The ALJ's finding that plaintiff's non-exertional

---

[4] Two cases in this district have recently been remanded on the basis of language similar to that used by the ALJ here. See Lyde v. Colvin, No. 3:13-CV-00603 (JAM), 2016 WL 53822, at *6-8 (D. Conn. Jan. 5, 2016); Mattioli v. Comm'r of Soc. Sec., No. 3:14-CV-00182 JAM, 2015 WL 4751046, at *5-6 (D. Conn. Aug. 11, 2015).  This case is distinguishable because the ALJ's decision includes additional discussion specifically addressing plaintiff's physical and mental impairments.

14

impairments were negligible is supported by substantial evidence. Regarding plaintiff's mental limitations, the ALJ explained that plaintiff was capable of following "simple instructions" and performing "routine, repetitive tasks." R. 850. Such a nonexertional limitation is not significant in terms of its impact on a claimant's possible range of work. See Zabala, 595 F.3d at 410-11 (claimant's limitation to simple instructions did not require vocational expert testimony). Turning to plaintiff's reaching limitation, substantial evidence supports the ALJ's determination that this limitation was also negligible. As the ALJ explained, the record contains no indication after July 2007 of "ongoing significant complaints or treatment for upper extremity symptoms." R. 853. In September 2010, no upper extremity deficits were recorded during a consultative examination. R. 1283-85. In 2011, plaintiff reported that she was going to the gym and working out but had decreased her exercise because of pain and tingling in her arm. R. 1238. After a cortisone shot, plaintiff reported that this condition was "much better," and a second shot was administered. R. 1240. The ALJ concluded that, "[g]iving [plaintiff] the benefit of the doubt," her "upper extremity problems contribute to her limitations to sedentary work but, at most, the evidence supports limitations to frequent reaching with the upper extremities." R. 853. Such a nonexertional impairment does not preclude reliance

15

on the Grids. See Falcon-Cartagena v. Comm'r of Soc. Sec., 21 F. App'x. 11, 14 (1st Cir. 2001) (reliance on the Grids proper even though the plaintiff could not perform constant overhead reaching).

IV. Conclusion

Accordingly, the recommended ruling (ECF No. 22) is hereby approved and adopted.  The motion to reverse the decision of the Commissioner (ECF No. 20) is denied, and the motion to affirm (ECF No. 21) is granted.

So ordered this 19th day of May 2016.

                                       /s/ RNC
                                    Robert N. Chatigny
                            United States District Judge